MARY ELLEN CONNELLY, ROBERT CONNELLY, BRIAN CONNELLY, A MINOR, BY AND THROUGH HIS GUARDIAN AD LITEM, NANCY McBRIDE, AND NELLIE LOCKETT, PLAINTIFFS V. FAMILY INNS OF AMERICA, INC., FAMILY INNS OF AMERICA FRANCHISING, INC., FAMILY INNS OF ROWLAND, INNCO MANAGEMENT CORPORATION, ROWLAND ASSOCIATES, LTD., A LIMITED PARTNERSHIP, BILL THOMAS, KENNETH SEATON, WAYNE DAVIS, AND GERALD WILLIAMSON, DEFENDANTS

No. COA99-1241

(Filed 29 December 2000)

**1. Negligence— failure to provide adequate security—summary judgment improper—foreseeability based on numerous criminal acts—proprietor on actual or constructive notice**

The trial court erred by granting summary judgment in favor of defendants on a negligence claim based upon defendants' alleged failure to provide adequate security at their motel even though there is no duty on the part of a proprietor to insure the

CONNELLY v. FAMILY INNS OF AM., INC.

[141 N.C. App. 583 (2000)]

safety of his patrons unless it is reasonably foreseeable that the conditions on the motel premises were such that its guests might be exposed to injury by the criminal acts of third persons, because: (1) the criminal act of armed robbery in this case was foreseeable in light of the one hundred instances of criminal activity occurring at the nearby I-95, U.S. 301 intersection in the preceding five years; and (2) it is reasonable to infer that if criminal incidents occurred so close to defendants' motel, defendants were or should have been aware of those facts which should have prompted them to take adequate safety measures.

**2. Appeal and Error— preservation of issues—failure to specifically name claims or mention requisite elements— failure to relate listed cases to any argument**

Although plaintiffs appeal the trial court's grant of summary judgment in favor of defendants on claims of negligent misrepresentation, negligent infliction of emotional distress, bad faith violation of special relationship, loss of consortium, intentional infliction of emotional distress, fraud, and unfair trade practices, plaintiffs failed to adequately preserve these claims for review because: (1) plaintiffs neither specifically named their negligence-based claims nor mentioned the requisite elements of the claims in their argument as required by N.C.G.S. § 1A-1, Rule 56(c), and have therefore abandoned them under N.C. R. App. P. 28(b)(5); (2) any argument by plaintiffs as to the existence of an issue of fact on foreseeability of crime at defendant's motel does not, in and of itself, address reversal of summary judgment on plaintiffs' remaining negligence-based claims and the claim for bad faith violation of a special relationship; and (3) plaintiffs listed cases for the remaining claims without relating those cases to any argument.

**3. Damages and Remedies— punitives—willful or wanton negligence not shown—summary judgment proper**

The trial court did not err by granting summary judgment for defendants as to the punitive damages claim based on willful or wanton negligence allegedly demonstrated by defendants' failure to make needed security changes at their motel in response to numerous criminal incidents at the nearby I-95, U.S. 301 intersection, because: (1) the alleged aggravating circumstances encompassing defendants' failure to provide reasonable and economically feasible measures standing alone is insufficient evidence; and (2) the motel manager's refusal to refund the modest room

CONNELLY v. FAMILY INNS OF AM., INC.

[141 N.C. App. 583 (2000)]

charge after plaintiffs were robbed on the premises is not a basis for submitting the issue of punitive damages to the jury.

Judge WALKER concurring.

Appeal by plaintiffs from order entered 17 March 1999 and order entered 28 May 1999 by Judge Robert F. Floyd, Jr. in Robeson County Superior Court. Heard in the Court of Appeals 28 August 2000.

*Parker, Poe, Adams & Bernstein, L.L.P., by Jack L. Cozort and Stephen D. Coggins, for the plaintiff-appellants.*

*Young, Moore & Henderson, P.A., by John A. Michaels and Kathryn H. Hill, for the defendant-appellees.*

LEWIS, Judge.

This case arose from an armed robbery that took place at the Family Inn Motel in Rowland, North Carolina ("Family Inn"). On 19 July 1994, plaintiffs Mary Ellen Connelly, her son, Brian Connelly, and his grandmother, Nellie Lockett, were traveling south on Interstate Highway 95 en route to Florida for a family vacation from their home in Pennsylvania. They obtained lodging for the night at the Family Inn, located at the intersection of Interstate 95 and U.S. Highway 301 ("I-95, U.S. 301 intersection"). The North Carolina-South Carolina border runs through this intersection. The commercial area known as "South of the Border" is across I-95, U.S. 301 intersection but is part of the same intersection, although it is located in South Carolina.

At approximately 2 a.m., while plaintiffs were asleep, two men entered through the door of plaintiffs' motel room, which contained only a push lock on the doorknob; there was no evidence of a chain or deadbolt. One of the men brandished a small handgun, announced, "This is a wake-up call!" and threatened to shoot plaintiffs if they could not find any money. They ordered plaintiffs to lie on the floor and cover themselves with sheets; they then ripped the phone wires out of the wall. One of the thieves walked outside to the parking lot to search Mary Ellen Connelly's car, which was parked directly outside the motel room. During this time, a local police officer drove through the parking lot, waving to the intruder as he drove by. The robbers left with Nellie Lockett's ATM card and pin number, seventy-five dollars in cash, two gold rings and two gold watches. The plaintiffs suffered no physical injuries.

After the intruders left, Mary Ellen Connelly went to the front office of the Family Inn, where the desk clerk called the police. The motel refused to refund plaintiffs' money for the room, but offered them another room in which to stay. After giving the police a description of the intruders, however, plaintiffs checked out of the Family Inn in the early morning hours and drove to Florida.

On 16 December 1996, plaintiffs brought suit against numerous defendants variously associated with the Family Inn. Plaintiffs first claimed that their injuries and damage were proximately caused by, among other things, defendants' negligent failure to provide adequate security for the protection of its patrons against intentional criminal acts of third parties and failure to maintain adequate control over keys to the rooms. In addition, plaintiffs alleged claims for (2) negligent misrepresentation, (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, (5) fraud, (6) bad faith violation of special relationship, (7) unfair trade practices and (8) loss of consortium.

On 17 March 1999, the trial court granted summary judgment for defendants on all claims. The trial court thereafter denied plaintiffs' motions under Rule 59 to alter or amend the order of summary judgment and Rule 60 to vacate the summary judgment in its entirety. Plaintiffs appeal.

## NEGLIGENCE

[1] The first issue is whether plaintiffs presented a sufficient forecast of evidence in support of their negligence claim based upon defendants' alleged failure to provide adequate security at the Family Inn to withstand defendants' motion for summary judgment. On appeal, the parties dispute whether plaintiffs presented sufficient proof on the issue of whether criminal acts at the Family Inn were foreseeable, which would create a duty in defendants to provide adequate protection for its guests.

Plaintiffs have dedicated a large part of their argument to several alternate theories of determining whether defendants had a duty to safeguard their patrons from criminal acts of third parties. In one, plaintiffs contend defendants' duty is established by N.C. Gen. Stat. § 72-1(a), which provides that "[e]very innkeeper shall at all times provide suitable lodging accommodations for persons accepted as guests in his inn or hotel." Plaintiffs assert the statute's mandate of "suitable lodging accommodations" sets forth an affirmative require-

ment which effectively makes innkeepers insurers of the safety of their guests, citing *Patrick v. Springs*, 154 N.C. 270, 70 S.E. 395 (1911).

In analyzing G.S. 72-1(a), this Court has made clear that the provision "does no more than state the common law duty of an innkeeper to provide suitable lodging to guests, and carries with it *no warranty of personal safety.*" *Urbano v. Days Inn*, 58 N.C. App. 795, 799, 295 S.E.2d 240, 242 (1982) (emphasis added). Furthermore, *Patrick v. Springs* involved neither application of G.S. 72-1 nor criminal acts of third parties. Rather, *Patrick* concerned a hotel guest who was asphyxiated by a leaking gas pipe in his hotel room, and did not address the issue of criminal acts by third parties. *Patrick*, 154 N.C. at 271-72, 70 S.E.2d at 395.

In addition, plaintiffs cite an array of cases in support of a rule that prima facie liability of negligence is established where a motel's doorlock system fails to prevent minimal effort intrusions. We reject this argument. From this jurisdiction, plaintiffs have cited only *Madden v. Carolina Door Controls*, 117 N.C. App. 56, 449 S.E.2d 769 (1994). In *Madden*, the plaintiff was injured by an automatic door in a supermarket. *Id.* at 57, 449 S.E.2d at 770. The Court's analysis focused on the doctrine of *res ipsa loquitor. Id.* at 59, 449 S.E.2d at 771. The *Madden* Court did not even suggest a rule regarding negligence in the instance of an intrusion by a third party, as is at issue here. We find *Madden* and the numerous cases from other jurisdictions set forth by plaintiffs in this regard inapplicable.

We turn now to the necessary issue of foreseeability. It is well settled in North Carolina that there is no duty on the part of a proprietor to insure the safety of his patrons. *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 638, 281 S.E.2d 36, 38 (1981). Rather, such a person owes only the general duty of ordinary care to maintain the premises in such a condition that it may be used safely by guests in the manner for which it was intended. *Rappaport v. Days Inn*, 296 N.C. 382, 383-84, 250 S.E.2d 245, 247 (1979). Generally, intentional, criminal acts of third persons cannot be reasonably foreseen by the proprietor, and therefore constitute an independent, intervening cause absolving the owner of liability. *Foster*, 303 N.C. at 638, 281 S.E.2d at 38.

The test in determining whether a proprietor has a duty to safeguard his patrons from injuries caused by the criminal acts of third persons is one of foreseeability. *Murrow v. Daniel*, 321 N.C. 494, 501,

364 S.E.2d 392, 397 (1988). The most probative evidence on the question of whether a criminal act was foreseeable is evidence of prior criminal activity committed. *Sawyer v. Carter*, 71 N.C. App. 556, 558, 322 S.E.2d 813, 815, *disc. review denied*, 313 N.C. 509, 329 S.E.2d 93 (1985). However, certain considerations restrict us as to which evidence of prior criminal activity is properly considered. General considerations are the location where the prior crimes occurred, *see, e.g., Murrow*, 321 N.C. at 501, 364 S.E.2d at 397 (considering location of prior crimes as guiding foreseeability analysis), the type of prior crimes committed, *see, e.g., Shepard v. Drucker & Falk*, 63 N.C. App. 667, 670, 306 S.E.2d 199, 202 (1983) (considering type of prior crime), and the amount of prior criminal activity, *see, e.g., Urbano*, 58 N.C. App. at 798, 295 S.E.2d at 242 (considering number of prior crimes).

Here, plaintiffs have submitted hundreds of incident reports as bearing on the question of whether criminal acts at the Family Inn were foreseeable. These reports relate incidents occurring in a variety of places, including the premises of the Family Inn, sites in Rowland and Lumberton, North Carolina, and the South of the Border area in South Carolina. We will limit our consideration of these reports to the location in which they occurred.

Clearly, evidence of prior criminal activity occurring *on* the subject premises is sufficiently probative on the issue of foreseeability. *Urbano*, 58 N.C. App. at 797, 295 S.E.2d at 241. We first conclude that the incidents of criminal activity occurring in Lumberton, North Carolina, which is approximately twenty miles north of Rowland, is too remote to guide our determination of whether criminal acts were foreseeable in this case. *See, e.g., Murrow*, 321 N.C. at 503, 364 S.E.2d at 398 (indicating evidence of criminal activity at another highway intersection located just *two miles away* from the I-95 and Highway 70 intersection should be excluded as physically too remote from defendants' motel to be of probative value).

In regard to which of the remaining off-premises incidents are properly considered, we turn to *Murrow*, 321 N.C. 494, 364 S.E.2d 392 (1988), which involved facts largely analogous to this case. The plaintiff in *Murrow* was sexually assaulted and robbed in her room at defendants' motel, located at the intersection of Interstate Highway 95 and N.C. Highway 70. *Id.* at 502, 364 S.E.2d at 397-98. The *Murrow* court held admissible evidence of prior crimes both *on* the premises of defendants' motel and from places of business at the surrounding I-95, Highway 70 interchange. *Id.* at 502, 364 S.E.2d at 398.

Accordingly, we consider evidence of criminal activity occurring at the surrounding I-95, U.S. 301 intersection, including that occurring on the premises of the Family Inn. This includes criminal activity from the surrounding South of the Border area, which, although in South Carolina, is part of the I-95, U.S. 301 intersection.

We next consider the types of criminal activity reflected in these incident reports. Plaintiffs have presented evidence of approximately one hundred sixty incidents of criminal activity occurring at the I-95, U.S. 301 intersection area in the preceding five years. These reported incidents include an assortment of criminal activity ranging from minor to serious. We do not agree that instances of public drunkenness, shoplifting, vandalism and disorderly conduct indicated by this evidence establish the foreseeability necessary to create a duty in this case. *See, e.g., Liller v. Quick Stop Food Mart, Inc.*, 131 N.C. App. 619, 624, 507 S.E.2d 602, 606 (1998) (refusing to consider shoplifting and "gas driveoffs" where the subject criminal activity was armed robbery). However, we do consider the following criminal activity occurring at the I-95, U.S. 301 intersection as bearing on the issue of foreseeability: two armed robberies, eleven assaults (three with intent to kill), five instances of breaking and entering, thirty-six instances of breaking and entering and larceny, forty-three larcenies, one attempted larceny, and two instances of pointing a firearm. *See, e.g., Murrow*, 321 N.C. at 502, 364 S.E.2d at 398 (considering incidents of armed robbery, kidnapping, assault, vehicle theft and breaking and entering and larceny as bearing on the issue of foreseeability).

We next consider the number of relevant reported crimes occurring in the I-95, U.S. 301 intersection. The evidence in this case, when viewed in the light most favorable to the plaintiffs, indicates that in the five years preceding the armed robbery in this case, one hundred instances of criminal activity bearing on the issue of foreseeability occurred at the I-95, U.S. 301 intersection. This number of crimes was sufficient to raise a triable issue of fact as to the foreseeability of the attack upon plaintiffs. *See also Murrow*, 321 N.C. at 502-03, 364 S.E.2d at 398 (evidence of one hundred incidents of criminal activity taking place at intersection where defendants' motel was located in the preceding four years raised a triable issue as to reasonable foreseeability); *Urbano*, 58 N.C. App. at 798-99, 295 S.E.2d at 242 (evidence of forty-two episodes of criminal activity taking place on motel premises during three-year period prior to plaintiff's injury raised a triable issue of reasonable foreseeability). *But cf. Liller*, 131 N.C. App. at 623, 507 S.E.2d at 606 (evidence of six undisputed incidents of crimi-

nal activity in the preceding three years insufficient evidence of foreseeability to survive defendant's summary judgment motion); *Sawyer*, 71 N.C. App. at 562, 322 S.E.2d at 817 (evidence of single robbery of convenience store five years earlier, coupled with evidence of occasional robberies of other convenience stores and businesses at unspecified locations over extended period of time insufficient evidence of foreseeability to survive defendant's summary judgment motion); *Brown v. N.C. Wesleyan College*, 65 N.C. App. 579, 583, 309 S.E.2d 701, 703 (1983) (holding that "scattered incidents of crime through a period beginning in 1959 were not sufficient to raise a triable issue as to whether the abduction and subsequent murder of plaintiff's intestate was reasonably foreseeable" by defendant college).

However, this does not end our inquiry on the question of foreseeability. Establishing a duty on the claim of negligence here is contingent upon notice to the proprietor of that criminal activity, which notice may be either actual or constructive. The Restatement (Second) of Torts, § 344 (1965) has been adopted by this Court in determining whether a duty exists to protect patrons from the criminal acts of third parties. In regard to notice, Restatement (Second) § 344, Comment f states:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he *knows or has reason to know* that the acts of the third person are occurring, or are about to occur. He may, however, *know or have reason to know*, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he *should reasonably anticipate* careless or criminal conduct on the part of the third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

(Emphasis added) (cited in *Foster*, 303 N.C. at 639-40, 281 S.E.2d at 38-39).

Plaintiffs' evidence here fulfills the requirement of notice set forth in the Restatement (Second) of Torts. In addition to the incident reports indicating significant criminal activity in the area under con-

sideration, the evidence includes an affidavit from the Rowland Chief of Police stating that during the course of his career with the Rowland Police Department (since 1981), he was aware of a significant crime problem at the Family Inn. Even though a number of these incidents occurred at South of the Border and thus, were investigated by the Dillon County Sheriff's Department in South Carolina, it is reasonable to infer that if criminal incidents occurred so close to defendants' motel, the defendants were or should have been aware of those facts which should have prompted them to take adequate safety measures. *See also Murrow*, 321 N.C. at 502, 364 S.E.2d at 398.

We therefore conclude the evidence before the trial court in this case raised a triable issue as to whether defendants should have reasonably foreseen that the conditions on its motel premises were such that its guests might be exposed to injury by the criminal acts of third persons. Such issues were and still are for the jury and were not to be determined as a matter of law by the trial court. Accordingly, we reverse summary judgment as to plaintiffs' claim for negligence.

## PLAINTIFFS' REMAINING CLAIMS

[2] In addition to the claim of negligence, plaintiffs appeal the trial court's grant of summary judgment as to their "negligence-based" claims of (1) negligent misrepresentation, (2) negligent infliction of emotional distress, (3) bad faith violation of special relationship, and (4) loss of consortium, as well as their remaining claims for (5) intentional infliction of emotional distress, (6) fraud and (7) unfair trade practices. Plaintiffs have failed to adequately preserve these remaining claims for our review.

We turn first to plaintiffs' "negligence-based" claims. Plaintiffs have neither specifically named these "negligence-based" claims nor mentioned the requisite elements of the claims in their argument. Although they have submitted to this Court volumes of evidence in the form of depositions, affidavits and various exhibits in response to defendants' motion for summary judgment, they have not pointed in their brief to any forecast of evidence establishing a prima facie case, or even an element of any of these claims, as they are required to do in a summary judgment case. N.C.R. Civ. P. 56(c); *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 775 (1998).

We note that the foregoing foreseeability discussion examined the narrow issue of whether the evidence as to a proprietor's duty to

safeguard his guests from the criminal acts of third persons was sufficient to withstand summary judgment on plaintiffs' claim for negligence. Any argument by plaintiffs as to the existence of an issue of fact on foreseeability of crime at the Family Inn does not, in and of itself, address reversal of summary judgment on plaintiffs' remaining "negligence-based" claims. The remaining "negligence-based" claims include elements which are distinct to each of those claims and not part of plaintiffs' claim for negligence. *See, e.g., Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (citing elements of negligent infliction of emotional distress), *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990); *Johnson v. Johnson*, 317 N.C. 437, 447, 346 S.E.2d 430, 436 (1986) (citing requirements for loss of consortium); *Davidson and Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 669, 255 S.E.2d 580, 585 (citing elements of negligent misrepresentation), *disc. review denied*, 298 N.C. 295, 259 S.E.2d 911 (1979). The same is true for plaintiffs' claim for bad faith violation of special relationship, which elements they have alleged to include: (1) defendants agreed to provide safe lodging for the plaintiffs (2) defendants breached that agreement and (3) it was reasonably foreseeable that the breach of that agreement would result in damages to plaintiffs. The discussion in plaintiffs' brief addresses whether criminal conduct could have been foreseeable at the Family Inn, which does not compose an entire element of any one of these "negligence-based" claims.

Having failed to establish by "reason or argument . . . or authority cited" that these remaining "negligence-based" claims should have been submitted to the jury in this case, we deem them abandoned under Appellate Rule 28(b)(5). Accordingly, we leave undisturbed the trial court's grant of summary judgment as to plaintiffs' "negligence-based" claims.

Similarly, we find plaintiffs have not properly preserved their remaining claims of (5) intentional infliction of emotional distress, (6) fraud and (7) unfair trade practices for our review. In support of their contention that summary judgment as to these claims should be reversed, plaintiffs have but listed cases; they have not related those cases to any argument in support of the trial court's denial of summary judgment on those claims. For instance, in reference to the claim of fraud, plaintiffs assert that the "Family Inn's misleading conduct fulfills the elements required for (a) the fraud causes of action . . . [For elements of fraud, see *Rowan Co. Bd. of Educ. v. United States Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658-59

(1992)]." In order to properly preserve these claims for our review, plaintiffs must have done more than merely referencing "misleading conduct" from another portion of their brief and citing to case law without any accompanying argument as to the elements of the alleged claim. N.C.R. App. P. 28(b)(5); *Smith v. Carlina Coach Co.*, 120 N.C. App. 106, 114-15, 461 S.E.2d 362, 367 (1995) (holding plaintiff's mere contention in brief that evidence was sufficient to establish a prima facie case of defamation in the form of libel without supporting reason or argument insufficient to preserve issue for appellate review); *see also Brown v. Boney*, 41 N.C. App. 636, 647, 255 S.E.2d 784, 790-91 (holding plaintiff's listing of several cases in its brief with no attempt to relate those cases to its assignment of error violated Appellate Rule 28), *cert. denied*, 298 N.C. 294, 259 S.E.2d 910 (1979).

## PUNITIVE DAMAGES

[3] Plaintiffs also contend the trial court erred in granting summary judgment for defendants as to the punitive damages claim based on willful or wanton negligence. Because we have reversed summary judgment only as to plaintiffs' negligence claim, we address the propriety of punitive damages with respect to that claim only. *See, e.g., Paris v. Kreitz*, 75 N.C. App. 365, 374, 331 S.E.2d 234, 241 (stating that party's entitlement to punitive damages does "not constitute a separate cause of action;" rather, it "can only arise in connection with the tortious act"), *disc. review denied*, 315 N.C. 185, 337 S.E.2d 858 (1985). We note that since Chapter 1D of the North Carolina General Statutes pertaining to punitive damages was not effective until after the incident in this case occurred, it does not apply. N.C. Gen. Stat. § 1D-1, Editor's Note (1999).

As a general rule, punitive damages may be recovered where tortious conduct is accompanied by an element of aggravation, as when the wrong is done willfully or under circumstances of rudeness, oppression, or express malice, or in a manner evincing a wanton and reckless disregard of the plaintiffs' rights. *Robinson v. Duszynski*, 36 N.C. App. 103, 106, 243 S.E.2d 148, 150 (1978). "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." *Siders v. Gibbs*, 39 N.C. App. 183, 187, 249 S.E.2d 858, 861 (1978). "An act is willful when there exists 'a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another,' a duty assumed by contract or imposed by law." *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 383-84, 291 S.E.2d 897, 903 (quoting *Brewer v. Harris*,

279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971)), *aff'd* 307 N.C. 267, 297 S.E.2d 397 (1982).

The plaintiffs' forecast of evidence on the issue of willful and wanton conduct tended to show that the Family Inn failed to make needed security changes in response to numerous criminal incidents in the I-95, U.S. 301 intersection. The Family Inn displayed a video surveillance camera in the front reception area which did not actually work. It also failed to institute private security patrols, instead relying on local police, and did not post warning signs on the premises to ward off trespassers. In addition, plaintiffs contend the fact of the Family Inn's refusal to refund plaintiffs the cost of their room warranted submission of the issue of punitive damages to the jury.

The facts of this case are similar to those in *Wesley v. Greyhound Lines, Inc.*, 47 N.C. App. 680, 268 S.E.2d 855, *disc. review denied*, 301 N.C. 239, 283 S.E.2d 136 (1980). In *Wesley*, plaintiff brought an action against the bus company for failing to protect her from an assault that occurred in the restroom of the defendant's bus station. *Id.* at 684, 268 S.E.2d at 859. The plaintiff established that defendant's bus station was located in a high crime area in which drug arrests were common and that pimps, prostitutes and vagrants loitered about the premises. *Id.* at 685, 268 S.E.2d at 859. The assailant, a loiterer, had bothered passengers in the station on other occasions and had been asked to leave on multiple occasions. *Id.* The entrance to the women's restroom was not observable by employees at defendant's station, although technological means were available to make it so. *Id.* at 700, 268 S.E.2d at 867. Though a police officer had spoken to defendant's agents about the need for and availability of security guards, the defendant had not provided any. *Id.* The *Wesley* Court concluded the evidence was insufficient to submit the issue of punitive damages based on willful or wanton negligence to the jury, even though the defendant had a special duty as a carrier to protect its passengers from assault. *Id.* at 701, 268 S.E.2d at 868; *see also Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 51, 524 S.E.2d 53, 60 (1999) (evidence that no security measures such as locks or guards were in place to protect customers at restaurant located in high crime area where one plaintiff was shot and killed and another injured was insufficient aggravation to submit punitive damages issue to the jury).

Applying the standard from *Wesley* to the evidence presented in this case, we conclude the evidence was insufficient to create a triable issue as to punitive damages. The alleged aggravating circum-

stances here encompass defendants' failure to provide reasonable and economically feasible measures. This, standing alone, was insufficient in *Wesley*, as it is in this case. In addition, however niggardly defendant's manager's refusal to refund the modest room charge after being robbed on the premises, this is not a basis for submitting the issue of punitive damages to the jury. Thus, the trial court did not err in granting summary judgment for defendants as to the punitive damages claim.

In sum, we reverse summary judgment only as to plaintiffs' claim for negligence. We affirm summary judgment as to the remaining claims, including negligent misrepresentation, negligent infliction of emotional distress, intentional infliction of emotional distress, fraud, bad faith violation of special relationship, unfair trade practices, loss of consortium and punitive damages.

Affirmed in part, reversed in part, and remanded.

Judge HUNTER concurs.

Judge WALKER concurs with separate opinion.

WALKER, Judge, concurring.

I write separately to emphasize the plaintiffs' entitlement to prove damages upon establishing their claim of negligence at trial.

The record reviewed by the trial court on defendants' motion for summary judgment included the plaintiffs' depositions. In their depositions, plaintiffs described the traumatic events of gunmen breaking into their room in the middle of the night, screaming, threatening, and robbing them of their valuables. This evidence from their depositions is set out in plaintiffs' brief. We have determined that, at this stage, the elements of negligence are satisfied such that plaintiffs' claim should survive summary judgment. If plaintiffs prove their claim of negligence at trial, they would be entitled to all damages which proximately flow from this negligence including all physical and mental injuries and pain and suffering.

As to the element of damages for pain and suffering:

Pain and suffering damages are intended to redress a wide array of injuries ranging from physical pain to anxiety, de-

pression, and the resulting adverse impact upon the injured party's lifestyle.

*David A. Logan and Wayne A. Logan, North Carolina Torts* § 8.20 (d) at 178 (1996 edition).