KENNETH P. ANDRESEN AND MARGUERITTE C. ANDRESEN, PLAINTIFFS V. PROGRESS ENERGY, INC., CAROLINA POWER & LIGHT COMPANY, AND CAROLINA POWER & LIGHT COMPANY D/B/A PROGRESS ENERGY CAROLINAS, INC., DEFENDANTS

No. COA09-1207

(Filed 18 May 2010)

**1. Utilities— underground power line—no duty to inspect**

The trial court correctly granted summary judgment for defendants in a negligence action arising from a damaged underground power line where plaintiffs did not establish a duty to periodically unearth and inspect the line.

**2. Contracts— power company service contract—prima facie case of breach—evidence not sufficient**

There was no genuine issue of fact as to the terms of a contract between plaintiff and defendant-power companies where plaintiff testified that he neither saw, agreed to, nor signed defendants' service agreement. A reasonable mind would not accept this testimony as adequate to support the existence of contract terms as yet unidentified and summary judgment was properly granted.

ANDRESEN v. PROGRESS ENERGY, INC.

[204 N.C. App. 182 (2010)]

Appeal by plaintiffs from order entered 6 May 2009 by Judge Ola M. Lewis in Brunswick County Superior Court. Heard in the Court of Appeals 25 February 2010.

*Andresen & Arronte, PLLC, by Julian M. Arronte, for plaintiffs-appellants.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Scott Lewis and Ellen J. Persechini, for defendants-appellees.*

JACKSON, Judge.

Kenneth P. Andresen ("Andresen") and Margueritte C. Andresen (collectively, "plaintiffs") appeal the 6 May 2009 order granting summary judgment to Progress Energy, Inc.; Carolina Power & Light Company; and Carolina Power & Light Company D/B/A Progress Energy Carolinas, Inc. ("defendants"). For the reasons stated herein, we affirm.

On 4 January 2008, plaintiffs arrived at their vacation home on Bald Head Island to find "something unusual" with their electrical system. When they flipped the light switches, the light bulbs were a dim amber color and then glowed intensely. According to Andresen, "the lights would get very bright on one portion of the house and then they were, at that same moment, rather dim where my wife was." Plaintiffs placed a call to defendants, their electric service provider. One of defendants' service crews arrived at plaintiffs' house later that evening, and after fixing the problem with the underground neutral line, which apparently had been nicked, a crew member told plaintiffs to check all of their appliances because they "probably ha[d] all gotten fried." When plaintiffs checked their appliances, they found problems with all of them. The majority, if not all, of plaintiffs' appliances had been plugged directly into the wall outlets, and to plaintiff's recollection, none of the appliances were equipped with internal surge protectors. Plaintiffs contacted defendants' claims department.

On 18 January 2008, Andresen met at the vacation home with representatives from defendants; AT&T, plaintiffs' telephone and Internet provider; and Telemedia, plaintiffs' television provider. According to Andresen, defendants scheduled this meeting because defendants' representative "thought that one of those entities [Telemedia or AT&T] damaged the line." Defendants' representatives unearthed the power, cable, and telephone lines and took photographs of them. Defendants denied plaintiffs' claim, because their representative

thought "that someone else is responsible for [the nicked line] and [defendants] are not."

Plaintiffs filed suit against defendants on 2 April 2008, claiming both negligence and breach of contract. On 25 July 2008, plaintiffs filed an amended complaint. Plaintiffs voluntarily dismissed Progress Energy, Inc. as a defendant on 21 August 2008. Defendants filed their answer on 26 September 2008, denying, *inter alia*, both that they had been negligent and that they had breached their contract with plaintiffs. Defendants filed a motion for summary judgment, and following discovery and a 27 April 2009 hearing on the motion, the trial court granted summary judgment in favor of defendants on 6 May 2009. Plaintiffs appeal.

Plaintiffs' first argument is that genuine issues of material fact exist as to whether defendants owed plaintiffs a duty to maintain their power line. We disagree.

[1] We review a trial court's grant of summary judgment *de novo*. *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006) (citing *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004)). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.' " *Id.* (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005)). Our Supreme Court has held that "an issue is genuine if it is supported by substantial evidence, and [a]n issue is material if the facts alleged . . . would affect the result of the action[.]" *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (internal citations and quotation marks omitted). Furthermore, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference[.]" *Id.* (internal citations and quotation marks omitted).

The movant—defendants in the case *sub judice*—bears the burden of showing that "(1) an essential element of plaintiff's claim is nonexistent; (2) plaintiff cannot produce evidence to support an essential element of its claim; or (3) plaintiff cannot surmount an affirmative defense raised in bar of its claim." *Liller v. Quick Stop Food Mart, Inc.*, 131 N.C. App. 619, 621, 507 S.E.2d 602, 604 (1998) (citation omitted).

In order to sustain a claim for negligence, a plaintiff must prove (1) the defendant owed a duty to the plaintiff; (2) the defendant

failed to exercise proper care in the performance of the duty; and (3) the breach of the duty was a proximate cause of the injury suffered by the plaintiff.

*Sweat v. Brunswick Electric Membership Corp.*, 133 N.C. App. 63, 65, 514 S.E.2d 526, 528 (1999) (citing *Westbrook v. Cobb*, 105 N.C. App. 64, 67, 411 S.E.2d 651, 653 (1992)).

Our case law that addresses an electricity provider's duty to maintain its equipment focuses on above-ground lines—rather than those buried underground as here—and bodily injury to people—rather than the damage to property asserted here.

A supplier of electricity owes the highest degree of care to the public because of the dangerous nature of electricity. An electric company is required "to exercise reasonable care in the construction and maintenance of their lines when positioned where they are likely to come in contact with the public." However, "the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires. . . ." Also, this Court has held that an electrical utility has exercised reasonable care when it has insulated its power lines "by height and isolation in accordance with existing regulations."

*Id.* (internal citations omitted).

According to the administrative rules and regulations that govern our State's utilities, "[e]ach utility shall maintain its plant, distribution system and facilities at all times in proper condition for use in rendering safe and adequate service." 4 N.C. Admin. Code 11.R8-5(a) (2007). North Carolina utilities also "shall make a full and prompt investigation of all service complaints made to it by its consumers[.]" 4 N.C. Admin. Code 11.R8-6 (2007). Within its section specifically addressing underground utility lines, the National Electrical Safety Code from the American National Standards Institute[1] requires that "[a]ccessible lines and equipment . . . be inspected by the responsible party at such intervals as experience has shown to be necessary." NESC § 31.313.A.2 (2002).

In the instant case, whether defendants owed plaintiffs a duty to maintain their underground power line is an element of a *prima facie* case of negligence and is, therefore, material because it would affect

---

1. The National Electrical Safety Code was adopted by Rule R8-26 of the North Carolina Utility Commission Rules and Regulations.

the result of the action. However, plaintiffs' case must fail because they have failed to forecast any evidence that defendants in fact owed them a duty to unearth the underground power lines periodically and visually to inspect the lines to ascertain whether they had been nicked.

Plaintiffs argue that Chapter 8, Rule R8-23 of the North Carolina Utilities Commission Rules and Regulations requires electric utilities to "operate *and maintain* in safe, efficient and proper condition, all the facilities and instrumentalities used in connection with the regulation, measurement and delivery of electric current . . . ." 4 N.C. Admin. Code 11.R8-23 (2007) (emphasis added). However, defendants have complied with the specific requirements of the rules and regulations. They promptly investigated plaintiffs' complaint, arriving the same night that Andresen called in order to inspect and repair the nicked line. 4 N.C. Admin. Code 11.R8-6 (2007) ("Each utility shall make a full and prompt investigation of all service complaints made to it by its consumers[.]"). Plaintiffs presented no case law or statute that imposes a duty upon utility companies to inspect underground power lines. The applicable rules suggest that only *accessible* lines are subject to "inspect[ion] by the responsible party at such intervals as experience has shown to be necessary." NESC § 31.313.A.2 (2002). Plaintiffs have not suggested that they have an expert or any witness who will testify that such periodic inspection of underground lines is part of the reasonable care owed to customers by utility companies. Therefore, plaintiffs have failed to "produce evidence to support an essential element of [their] claim" because they have forecast no evidence that defendants owed them a duty to inspect underground power lines periodically in the absence of specific complaints. *Liller*, 131 N.C. App. at 621, 507 S.E.2d at 604 (citation omitted).

Because we hold that plaintiffs did not establish the element of duty within their *prima facie* case of negligence, plaintiffs cannot survive a motion for summary judgment based upon that claim. Therefore, we do not address their second argument that addresses one of defendants' defenses to the negligence claim—whether a genuine issue of material fact existed as to intervening negligence by a third party.

**[2]** Plaintiffs' final argument is that genuine issues of fact exist as to the terms of the contract between plaintiffs and defendants. We disagree.

## ANDRESEN v. PROGRESS ENERGY, INC.

[204 N.C. App. 182 (2010)]

The requirements for summary judgment are set forth *supra.* "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill,* 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citing *Jackson v. Carolina Hardwood Co.,* 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995)).

Here, defendants alleged that "[p]laintiffs' claim of breach of contract against [defendant] fails as a matter of law based on the valid and enforceable Service Agreement, produced in discovery and used as the basis of the plaintiffs' relationship with [defendant.]" The service agreement requires that the customer "install and maintain devices adequate·to protect his equipment against irregularities on [defendants'] system, including devices to protect against single phasing[,]" which plaintiffs did not do.·However, plaintiffs contend that Andresen's testimony that he had neither seen, executed, nor agreed to the service agreement raises a genuine issue of material fact as to the terms of the contract between the parties. This controversy is material because the terms of the contract necessarily implicate whether or not the contract was breached—the second element of a breach of contract claim. However, plaintiffs' claim still must fail, because although the unsigned service agreement presented by defendants is not dispositive, Andresen has not met his burden to present substantial evidence as to what the terms of the actual agreement between the parties were. A reasonable mind would not accept as adequate Andresen's testimony—that he neither saw, agreed to, nor signed defendants' service agreement—to support the existence of some as yet unidentified contractual terms that defendants allegedly breached. Without such forecast of evidence, plaintiffs have failed to present a *prima facie* case of breach of contract.

For these reasons, no genuine issues of material fact exist, and defendants were entitled to summary judgment as a matter of law. Therefore, we affirm the trial court's grant of summary judgment to defendants.

Affirmed.

Judges ELMORE and STROUD concur.